**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | § |
| | § **Chapter 11** |
| **OFS INTERNATIONAL LLC,** *et al.*, | § |
| | § **Case No. 21-31784 (DRJ)** |
| **Debtors.**[1] | § |
| | § **(Jointly Administered)** |
| | § |

**DECLARATION OF ALEXEY RATNIKOV IN SUPPORT**
**OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

I, Alexey Ratnikov, being duly sworn, depose and say:

1. I am the Vice President and Chief Financial Officer of OFS International, LLC ("OFSI") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"). I am over the age of 18, competent to testify, and authorized to submit this declaration (the "Declaration") on behalf of the Debtors.

2. I have served as the Chief Financial Officer of the Debtors since October 2012. In my capacity as the CFO of the Debtors, I am generally familiar with the Debtors' assets, liabilities and operations.

3. Except as otherwise noted, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' senior management, my review of relevant documents or, based on my experience and knowledge of the Debtors' operations and financial conditions, and my opinion. In making this Declaration, I have relied, in part, on information and materials that the Debtors' personnel and advisors have gathered, prepared,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: OFS International LLC (3527); Threading and Precision Manufacturing LLC (3527); OFSI Holding, LLC (3419).

verified, and provided to me in each case under my ultimate supervision, at my direction and/or for my benefit in preparing this Declaration. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

4.  To resolve immediate issues that may cause irreparable harm if not promptly addressed, the Debtors intend to request various types of relief in "first day" applications and motions (collectively, the "First Day Pleadings") in connection with the chapter 11 cases (the "Chapter 11 Cases").[2] I submit this declaration in support of the Debtors' (a) voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and (b) the First Day Pleadings. I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading up to these Chapter 11 Cases.

5.  This Declaration is divided into two parts. Part I provides background information about the Debtors, their business operations, their corporate and capital structures, and the circumstances surrounding the commencement of the Chapter 11 Cases. Part II discusses the First Day Pleadings.

## PART I – BACKGROUND

### A. Overview

6.  On May 31, 2021 (the "Petition Date"), the Debtors filed these Chapter 11 Cases in order to stay the foreclosure of their real property, maintain their business as a going concern, and obtain breathing room necessary to negotiate with their secured creditors on a financial restructuring. Additionally, on the Petition Date, the Debtors filed a $10 million fraudulent transfer adversary proceeding against a former equity holder. During the period leading up to the Petition

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Pleadings.

Date, the Debtors engaged an investment banker, a financial advisor and legal counsel to explore all potential alternatives and ultimately determined to file these chapter 11 cases. Like all companies providing oilfield services, the Debtors' business was severely impacted by the negative market conditions in the energy section and reduced commodity prices during 2020. However, the Debtors' performance has started to improve. They believe that they have a viable business that can be reorganized and intend to confirm a chapter 11 plan in these cases. In order to support these chapter 11 cases, the Debtors have secured up to $4 million in additional liquidity through post-petition financing to be provided by Sandton Capital Solutions Master Fund V, LP ("Sandton"). Of this $4 million in post-petition, one-time term loans, $800,000 will be available in a first tranche upon entry of an interim order approving the financing, $700,000 will be available as a second tranche upon entry of a final order approving the financing, and an additional $2.5 million may be made available as a discretionary third tranche for working capital purchases acceptable to Sandton in its sole discretion, and depending upon borrowing base availability.

**B. The Debtors' Business and Corporate Structure**

7. OFSI was founded in October 2012 and is headquartered in Houston, Texas. The Debtors provide "oil country tubular goods" and services such as threading, couplings, inspection services, pipe repair, accessories, rig returns, field services, and storage. The Debtors have operations in Houston, Texas, Odessa, Texas, Fort Worth, Texas, and Darlington, Pennsylvania.

8. The Debtors' current organizational structure is straightforward. Konstantin Semerikov owns 100% of OFSI Holding LLC; OFSI Holding LLC owns 100% of OFS International LLC; and OFS International LLC owns 100% of Threading and Precision Manufacturing LLC.

**C. The Debtors' Management and Workforce**

9. The Debtors' core management team consists of the following individuals:

| Name | Position |
|---|---|
| Konstantin Semerikov | President and Chief Executive Officer |
| Alexey Ratnikov | Vice President and Chief Financial Officer |
| Mathew Jarvis | Senior Executive Vice President |

10. As of the Petition Date, the Debtors had approximately 125 full-time employees, with 85 employed by OFSI and 40 employed by TPM. The Debtors also engage numerous independent contractors.

**D. The Debtors' Capital Structure**

11. The following description of the Debtors' capital structure is for informational purposes only and is qualified in its entirety by reference to the documents setting forth the specific terms of such obligations and their respective related agreements.

12. OFSI, as borrower, and PAO TMK, as lender, entered into that certain Loan Agreement dated as of September 19, 2017, with an advancing line of credit of up to $25,000,000 (the "PAO TMK Loan Agreement"). The PAO TMK Loan Agreement references a Security Agreement that was to be executed at the same time as the PAO TMK Loan Agreement, but the parties did not execute such a Security Agreement at that time, and the Debtor's obligation to PAO TMK was unsecured until July 2018.

13. On July 13, 2018, PAO TMK and OFSI entered into an Amendment to the PAO TMK Loan Agreement which extended the maturity date to December 20, 2021.

14. On July 13, 2018, OFSI executed a Security Agreement with PAO TMK granting PAO TMK a lien on OFSI's equipment.

11070455v3

15. On July 13, 2018, OFSI executed a Deed of Trust, Assignment of Rights, Security Agreement, and Financing Statement which was recorded in the real property records of Harris County and Ector County, Texas, granting PAO TMK a lien on OFSI's real property.

16. The Debtors, as borrowers, entered into a Credit Agreement dated as of July 13, 2018 (the "JPMorgan Credit Agreement"), with JPMorgan Chase Bank, N.A. ("JPMorgan"), as lender, with an initial revolving commitment in the amount of $20 million. The JPMorgan Credit Agreement is an asset-based lending credit facility. On July 13, 2018, the Debtors executed a Security Agreement granting JPMorgan a first lien on all assets of the Debtors except for their real property.

17. On July 13, 2018, JPMorgan entered into an Intercreditor Agreement with PAO TMK. In the Intercreditor Agreement, PAO TMK agreed and acknowledged that its liens on the Debtors' equipment were junior to the liens of JPMorgan and, other than this junior lien on equipment and its lien on real property, that it did not hold liens on any other assets of the Debtors. In the event of default on the PAO TMK Loan Agreement, JPMorgan agreed that PAO TMK could foreclose its liens against the Debtors' real property.

18. On October 26, 2018, the Debtors and JPMorgan executed the First Amendment to the JPMorgan Credit Agreement which increased JPMorgan's commitment to $30 million.

19. On February 22, 2019, the Debtors and JPMorgan executed the Second Amendment to the JPMorgan Credit Agreement which permitted, under certain conditions, the repayment of a $20 million loan from Volzhsky Pipe Plant.

20. On August 27, 2019, the Debtors and JPMorgan executed the Third Amendment to the JPMorgan Credit Agreement which increased JPMorgan's commitment to $40 million and specifically permitted the $10 million in additional borrowings to be used as a cash dividend to

OFSI Holdings, funds which were then used to fund the Transfer to TMK Steel discussed in detail below.

21. On April 13, 2020, OFSI received a PPP loan in the amount of $6,048,962.

22. On April 5, 2021, OFSI received an additional PPP loan in the amount of $2,000,000.

23. On May 27, 2021, JPMorgan closed the Debtors' revolving credit facility with a balance of $12.5 million.

24. On May 28, 2021, JPMorgan sold all of its rights, interests, and liens related to the JPMorgan Credit Agreement to Sandton.

25. As of the Petition Date, the amount due to Sandton is $12.5 million, which is secured by a senior lien on all of the Debtors' assets other than its real property.

26. As of the Petition Date, the amount due under the PAO TMK Loan Agreement is approximately $14.4 million, including accrued interest, which is secured by a senior lien on the Debtors' real property and a junior lien on the Debtors' equipment.

27. The Debtors estimate that their total pre-petition trade debt is approximately $50 million, of which approximately $40 million is owed to PAO TMK and related entities.

**E. Events Leading to Bankruptcy**

28. On April 2, 2020, the Debtors entered into a Forbearance Agreement with JPMorgan pursuant to which JPMorgan agreed to forbear from exercising its remedies through July 1, 2020.

29. On July 2, 2020, PAO TMK sent OFSI a Notice of Default and Intent to Accelerate the PAO TMK Loan Agreement based on a failure to make a $471,327.59 interest payment that was due on June 20, 2020.

30. On July 13, 2020, the Debtors retained Chiron Financial LLC ("Chiron") as their investment banker and financial advisor.

31. On July 14, 2020, PAO TMK sent OFSI notices of foreclosures sales on its real property located in Houston, TX and Midland, TX, which were scheduled to take place on August 4, 2020.

32. On July 15, 2020, the Debtors engaged Porter Hedges LLP as their restructuring counsel.

33. On August 5, 2020, PAO TMK and OFSI entered into a Forbearance Agreement pursuant to which OFSI made a payment of $235,663.80 to PAO TMK and PAO TMK agreed to forbear from exercising its remedies through October 31, 2020.

34. On September 23, 2020, JPMorgan and the Debtors entered into a Forbearance Agreement and Fourth Amendment to Credit Agreement which extended JPMorgan's forbearance period through October 31, 2020.

35. JPMorgan and PAO TMK each amended their forbearance agreement multiple times extending the forbearance period through April 30, 2021.

36. On May 1, 2021, PAO TMK informed the Debtors that it would not agree to any further extensions of the forbearance period.

37. On May 10, 2021, PAO TMK served the Debtors with notice of foreclosure for the Debtors' real estate scheduled to take place on June 1, 2021.

38. Throughout the forbearance period, Chiron worked on sourcing debt and/or equity financing and assisted the Debtors in their negotiations with JPMorgan and PAO TMK on a potential resolution of their claims. The Debtors were not successful in negotiating an out of court restructuring with their secured creditors.

39. In addition to acquiring the JPMorgan credit facility, Sandton agreed to provide post-petition financing to the Debtors in the aggregate amount of up to $16.5 million, which includes a DIP ABL Facility of $12.5 million and a DIP Term Loan Facility of up to $4 million (the "DIP Credit Facilities").  The additional liquidity of up to $4 million in the aggregate will be available in the form of multi-tranche, one-time term loans, including an $800,000 draw upon entry of the interim order, and a $700,000 draw upon entry of the final order.  Sandton may make, but will not have the obligation to make, the $2.5 million balance available as a discretionary third tranche for purposes of funding working capital purchases acceptable to Sandton, and depending on borrowing base availability.

40. The DIP Credit Facilities provide for a creeping roll up of Sandton's pre-petition secured debt.  The DIP Credit Facilities will be secured by, among other things, priming liens, subject to permitted liens, on all of the Debtors' assets other than its real property, and Sandton will be entitled to a super-priority administrative claim and other protections as more fully set forth in the DIP and Cash Collateral Motion and accompanying orders.

### F. The Fraudulent Transfer Adversary Proceeding

41. Pursuant to 11 U.S.C. §§ 544, 548 and 550, TEX. BUS. & COM. CODE ANN. § 24.001 *et seq*. and other applicable law, OFSI and its parent company OFSI Holding LLC ("OFSI Holding") filed an adversary proceeding on the Petition Date seeking to avoid and recover a $10 million transfer of cash made by OFSI, through OFSI Holding, to TMK Steel Holding Limited ("TMK Steel") as payment for the purchase of TMK Steel's 49% of the outstanding shares in OFSI Holding.  The transaction resulted in the former TMK Steel shares being held by OFSI Holding as treasury shares, and Konstantin Semerikov, the Debtors' President and Chief Executive Officer,

8

becoming the sole shareholder of OFSI Holding and the amount owed under the JPMorgan Chase Credit Agreement increasing by $10 million.

42. When OFSI was created, its holding company (the predecessor to OFSI Holding) was owned 75% by an affiliate of PAO TMK (a Russian corporation and affiliate of TMK Steel), 20% by TMK Steel, and 5% by an affiliate of Semerikov.

43. In September 2016, Semerikov bought a controlling interest in the predecessor of OFSI Holding. As of January 2019, TMK Steel owned 49% of the shares in OFSI Holding and Semerikov owned the other 51% of the shares.

44. On June 4, 2019, TMK Steel, Konstantin Semerikov, and OFSI Holding executed a Sale and Purchase Agreement (the "SPA") pursuant to which OFSI Holding agreed to buy TMK Steel's 4,900 shares (i.e. 49%) of OFSI Holding in exchange for $15 million to be paid as follows:

   a. $500,000 paid at closing,

   b. $10 million paid within 90 days of closing, and

   c. $4.5 million by June 10, 2020.

45. On June 4, 2019, using funds it received from Semerikov, OFSI Holding made the initial $500,000 transfer to TMK Steel, which subsequently transferred its shares to OFSI Holding. OFSI Holding continues to hold those shares as treasury shares, with Semerikov as the sole shareholder of OFSI Holding.

46. OFSI Holding had no funds from which it could pay the $10 million that was due to TMK Steel on September 4, 2019.

47. On August 27, 2019, the Debtors and JPMorgan executed the Third Amendment to Credit Agreement which increased JPMorgan's commitment to $40 million and authorized OFSI

to make a $10 million cash dividend or distribution to OFSI Holding to be utilized solely for the purpose of making the $10 million payment to TMK Steel due under the SPA.

48. On October 3, 2019, the parties amended the SPA to extend the deadline for the $10 million payment to no later than October 15, 2019.

49. On October 11, 2019, OFSI transferred $10 million it received from drawing on the JPMorgan Credit Agreement to OFSI Holding.

50. On October 11, 2019, OFSI Holding transferred that $10 million to TMK Steel (the "Transfer") in satisfaction of the second payment due under the SPA.

51. Neither OFSI nor OFSI Holding made the third payment of $4.5 million due under the SPA on June 10, 2020.

52. OFSI and OFSI Holding filed the adversary proceeding against TMK Steel seeking to avoid and recover the Transfer as a fraudulent transfer.

## PART II – FIRST DAY MOTIONS[3]

53. Contemporaneously herewith, the Debtors have filed a number of First Day Motions seeking orders granting various forms of relief intended to stabilize the Debtors' business operations, facilitate the efficient administration of the Chapter 11 Cases, and expedite a swift and smooth restructuring of the Debtors' balance sheet, including:

**A.   Administrative Motions:**

- **Joint Administration Motion:** *Debtors' Emergency Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 2].

- **Complex Case Designation:** *Debtors' Notice of Designation as Complex Chapter 11 Bankruptcy Cases* [Docket No. 3].

---

[3] Capitalized terms not otherwise defined in this section have the meanings ascribed to them in the applicable motion.

10

- **Claims and Administration Agent Application, Declaration, and Order:** *Debtors' Emergency Application for Entry of an Order (A) Authorizing the Retention and Appointment of BMC Group, Inc. as Claims, Noticing, and Solicitation Agent and (B) Granting Related Relief* [Docket No. 6].

- **Matrix and Schedules and Statements Extension Motion:** *Debtors' Emergency Motion to (I) Extend the Time to File Schedules and Statements of Financial Affairs, (II) Authorize the Debtors to File a Consolidated List of Their 30 Largest Unsecured Creditors, and (III) Waive the Requirement That Each Debtor File a List of Creditors* [Docket No. 5].

B.   **Finance Motions:**

- **Cash Management Motion:** *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Operating Their Cash Management System; (B) Honor Certain Prepetition Obligations, and (C) Maintain Existing Bank Accounts and Business Forms, and (II) Granting Related Relief* [Docket No. 11].

- **DIP and Cash Collateral Motion:** *Debtors' Emergency Debtors' Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. 105, 361, 362, 363, 364, and 507 and Fed. R. Bank. P. 2002, 4001 and 9014 (I) Approving Postpetition Financing, (II) Allowing Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 19].

C.   **Operational Motions:**

- **Insurance Motion:** *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Debtors to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Thereunder and (B) Renew, Revise, Extend, Supplement, Change, or Enter into New Insurance Policies, and (II) Directing Financial Institutions to Honor All Related Payment Requests* [Docket No. 7].

- **Utilities Motion:** *Debtors' Emergency Motion to (I) Approve Adequate Assurance of Payment to Utility Companies, (II) Establish Procedures to Resolve Objections by Utility Companies, and (III) Prohibit Utility Companies from Altering, Refusing, or Discontinuing Service* [Docket No. 8].

- **Employee Wages Motion:** *Debtors' Emergency Motion to (I) Pay Prepetition Wages, Salaries, and Other Compensation, and (II) Continue Certain Employee Benefit Programs* [Docket No. 9].

- **Taxes Motion:** *Debtors' Emergency Motion for an Order Authorizing (I) The Debtors to Pay Certain Prepetition Taxes and Related Obligations and (II) Authorizing Financial Institutions to Receive, Process, Honor, and Pay All Checks Presented for*

11070455v3

*Payment and to Honor All Funds Transfer Requests Related to Such Obligations* [Docket No. 10].

- **Critical Vendor Motion:** *Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing, But Not Directing, Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendors and (B) Authorizing Financial Institutions to Honor All Related Checks and Electronic Payment Requests* [Docket No. 12].

54. I am familiar with the content and substance of the First Day Motions. I have consulted with advisors regarding and understand each of the First Day Motions and the relief requested therein. To the best of my knowledge and belief, the factual statements contained in each of the First Day Motions are true and accurate and each such factual statement is incorporated herein by reference.

55. I believe that the relief requested in the First Day Motions is necessary, in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will allow the Debtors to operate with minimal disruption and maximum value preservation during the pendency of the Chapter 11 Cases. I also understand that the relief requested in the First Day Motions is supported by Sandton. Failure to grant the relief requested in any of the First Day Motions may result in immediate and irreparable harm to the Debtors, their business, and their estates. Accordingly, for the reasons set forth herein and in each respective First Day Motion, the Court should grant the relief requested in each of the First Day Motions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 1, 2021.
Houston, Texas

By: */s/ Alexey Ratnikov*
Name: Alexey Ratnikov