**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | § <br> § Chapter 11 <br> § |
| **OFS INTERNATIONAL LLC,** *et al.*, | § Case No. 21-31784 (DRJ) <br> § |
| Debtors.[1] | § (Jointly Administered) <br> § |

**DEBTORS' OBJECTION TO WORLD EQUITY GROUP, INC.'S EMERGENCY MOTION TO ALLOW LATE FILED PROOF OF CLAIM PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 3003(c)(3) AND 9006(b)(1)**
(Relates to Doc. No. 322)

OFS International LLC ("OFSI") and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), file this Objection to World Equity Group, Inc.'s ("WEG") Emergency Motion to Allow Late Filed Proof of Claim Pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1) (the "Motion").

**SUMMARY**

1. WEG's Motion fails to disclose its full involvement in this case. Less than a week after the Petition Date, WEG contacted the Debtors about this bankruptcy case and sought to be engaged as an investment banker despite the Debtors having already hired a different investment banker. WEG presented the Debtors with a term sheet for a sale-leaseback transaction that had facial appeal but ended up being too good to be true. As the full facts set forth below make clear, this is not a case of excusable neglect. WEG has known about this case since June, 2021 and has had numerous communications with the Debtors during the last four months related to an alternative post-petition retention. When that didn't work, WEG sent a payment demand to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: OFS International LLC (3527); Threading and Precision Manufacturing LLC (8899); OFSI Holding, LLC (3419).

1

Debtors in violation of the automatic stay and then filed their proof of claim more than two months after the claims bar date. WEG's Motion is factually inaccurate, does not meet the excusable neglect standard and should be denied.

## BACKGROUND

2.     On March 23, 2020, the Debtors entered into an engagement letter for investment banking services with WEG.

3.     On July 29, 2020, the Debtors terminated the engagement letter with WEG. The engagement agreement had a one-year tail period.

4.     On May 31, 2021 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.     On June 1, 2021, the Debtors filed a motion seeking approval of DIP financing with an affiliate of Sandton Capital ("Sandton") (Doc. No. 19) and the declaration of Alexey Ratnikov in support of the first day motions (Doc. No 20). Both of these pleadings disclosed that (a) on May 27, 2021, JPMorgan closed the Debtors' revolving credit facility with a balance of $12.5 million, and (b) on May 28, 2021, JPMorgan sold all of its rights, interests, and liens related to the JPMorgan Credit Agreement to Sandton.

6.     On June 4, 2021, Paul Gorski of WEG emailed Ratnikov "Do you have some time to catch up as it relates to your BK process. We represent some large strategics right now." *See* Exhibit A.

7.     Despite being aware that the Debtors had engaged a different investment banker, Gorski continued to pursue Ratnikov regarding a sale-leaseback alternative to traditional real estate financing.

8. On July 8, 2021, WEG sent the Debtors a signed letter of intent from a large, publicly-traded REIT setting forth the terms of a proposed sale-leaseback transaction that would have provided significantly more capital to the Debtors than traditional financing on terms that seemed reasonable. *See* Exhibit B.

9. In order to fulfill its fiduciary duties and consider all potential alternatives for exiting chapter 11, the Debtors decided to pursue the sale-leaseback term sheet on a dual track with Chiron's efforts to raise traditional real estate financing.

10. WEG did not make the Debtors aware that they were simultaneously acting as an advisor to a strategic party that had already been contacted by Chiron. On August 30, 2021, Chiron gave WEG employees, including Gorski, access to the Debtors' confidential data room in the context of advising this strategic party, although it appears that they did not log into the data room with these credentials.

11. On September 7, 2021, the Debtors executed an engagement letter with WEG that was limited to the party who provided the sale-leaseback term sheet and a small number of other real estate financing sources that had not been contacted by Chiron. This list does not include Sandton.

12. In the event that WEG was able to finalize a term sheet on the sale-leaseback transaction or procure superior financing to Chiron, the Debtors prepared a draft application to employ WEG which was delivered to WEG on September 8, 2021. The draft application included the list of names for WEG to run conflicts on which listed Sandton as the secured lender. *See* Exhibit C.

13. On September 9, 2021, WEG representatives were again granted access to the Debtors' data room which included copies of the Sandton DIP credit agreement.

14. On September 10, 2021, following a conversation regarding revisions to the proposed application to employ, Debtors counsel sent WEG another email with the list of names to run for conflicts which included Sandton as a secured lender. *See* <u>Exhibit D</u>. Debtors counsel followed up later that day with a revised draft of the application to employ with the note "Please pass my information on to your compliance department that will review and let them know they can reach out to me directly with any issues to discuss." *See* <u>Exhibit E</u>. No application to employ WEG was ever filed because the issue became moot.

15. On September 28, 2021, WEG informed the Debtors that the party who had provided the sale-leaseback term sheet was not willing to engage in negotiations with the Debtors and had withdrawn their LOI. Despite losing the sale-leaseback opportunity, WEG attempted to stay in the deal by providing term sheets for traditional real estate financing.

16. On October 1, 2021, Paul Gorski of WEG sent the Debtors and their counsel an email with the subject line "Working Capital" asking "Did Stanton (sic) take JPM out at a discount?". Counsel responded "Yes, why?". Gorski replies "Just curious. We have closed over 30 ABL's for similar companies in the space and seeing discounts range quite a bit but with coupling stock being on shortage I would think it would be a small discount. I don't need the specifics." *See* <u>Exhibit F</u>.

17. On October 7, 2021, WEG sent the Debtors an invoice in the amount of $300,000 purportedly based on their fee owed on the Sandton financing and requested that the Debtor "please remit payment promptly." *See* <u>Exhibit G</u>.[2]

18. On October 12, 2021, the Debtors signed two term sheets with financing sources obtained by Chiron. The next day the Debtors informed WEG of this fact.

---

[2] The invoice is dated October 6, 2021, but it was delivered to the Debtors on October 7, 2021.

19. On October 19, 2021, the Debtors sent WEG a letter stating that the October 6, 2021 invoice was a stay violation and that the bar date had passed to assert a timely claim in the case.

20. On October 22, 2021, WEG filed the Motion and its proof of claim. Both the Motion and the proof of claim allege that WEG first learned of the Sandton financing on October 6, 2021.

## **OBJECTION**

21. The Court may only allow a late-filed claim if the creditor's failure to file a timely claim was the result of excusable neglect on the part of the creditor and its counsel. Fed. R. Bankr. P. 9006(b)(1); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993). The burden is on the moving party to establish excusable neglect. *In re ASARCO, LLC*, 2008 WL 4533733, at *1 (Bankr. S.D. Tex. Oct. 3, 2008). The failure to file a timely claim, to investigate the bankruptcy case, or to do anything to preserve one's rights is inconsistent with excusable neglect. *See In re Bison Bldg. Holdings, Inc.*, No. 09-34452, 2012 WL 3230472, at *3 (Bankr. S.D. Tex. Aug. 3, 2012). "Creditors, with a knowledge of the bankruptcy proceedings prior to the expiration of the bar date, have a duty of inquiry [under 11 U.S.C. § 523(a)(3)(B) ]. There is no reason that this same responsibility for due diligence should not be ascribed to the creditor who seeks an extension after the expiration of the bar date." *In re TS Indus., Inc.*, 1991 WL 261702, at *3 (10th Cir. Dec. 6, 1991).

22. In applying the excusable neglect standard, the Court must consider "all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the

delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.  Ev

23. The circumstances here plainly fall short of meeting the excusable neglect standard. WEG's Motion should be denied.

### A. The Reason for the Delay is Not Excusable.

24. WEG's statement that it did not know about Sandton providing financing in this case until Sandton called WEG on October 6, 2021 is directly contradicted by the facts, including WEG's own statements regarding Sandton. WEG was aware of the bankruptcy case from as early as June 4, 2021. WEG communicated with the Debtos' CFO and eventually convinced the Debtors to execute a new investment banking engagement letter with WEG based on the strength of its sale-leaseback term sheet. WEG had access to the Debtors' data room including the Sandton loan documents. WEG had every reason and opportunity to know that it had a claim to assert. WEG conspicuously did not respond to the list of conflicts names, which listed Sandton as a secured lender—despite being provided with the list several times.

25. Additionally, WEG's claim that it did not know the identity of Sandton as the DIP lender in this case until October 6, 2021 is false. In addition to having specific knowledge of the Debtors' bankruptcy cases in early June, 2021 and WEG's access to the Debtor's data room, WEG emailed Debtors' counsel on October 1, 2021 asking whether Sandton had purchased the JPMorgan debt at a discount.

26. The most generous interpretation of Sandton's position is that the affidavit to the Motion is signed by Mark Lishchynsky, as is the pre-petition March 2020 engagement letter (which was terminated prior to the petition date). All communications with WEG following the petition date regarding the sale-leaseback transaction and potential engagement were with Paul

Gorski, including the email of October 1, 2021. At best, Lishchynsky may not have had the personal knowledge and information available to him that Gorksi had, but one hand of a company not knowing what the other is doing is not excusable neglect. *See, e.g., In re Keene Corp.*, 188 B.R. 903, 911-12 (Bankr. S.D.N.Y. 1995) (holding that the failure to file claim due to breakdown of corporation's internal procedures and communications did not qualify as excusable neglect). This factor weights in favor of denying the Motion.

### B. The Debtors Will Suffer Prejudice if the Claim is Allowed.

27.     The Debtors will suffer prejudice in this case if the claim is allowed as timely filed because it will be forced to file an objection to the claim in the time period where it should be preparing for confirmation and working on the due diligence for its financing. *See In re ASARCO, LLC*, 2008 WL 4533733 *2 (Bankr. S.D. Tex. Oct. 3, 2008) ("Courts have acknowledged that '[p]rejudice from a late-filed claim is greater when the creditor's delay extends into the period in which the plan of reorganization is being negotiated, drafted, filed, or confirmed."). The Motion itself has been a distraction in the days leading up to the disclosure statement hearing. This factor weighs in favor of denying the Motion.

### C. The Length of the Delay and its Potential Impact.

28.     WEG has known about the Debtors' bankruptcy case since no later than June 4, 2021, just four days after the Petition Date. WEG waited until two business days prior to the disclosure statement hearing to file the Motion and its claim. The length of the delay is significant. In particular when viewed in the context of WEG's ongoing involvement in the case and efforts to be employed as a disinterested party. This factor weighs in favor of denying the Motion.

7

**D. Whether the Movant Acted in Good Faith**

29. WEG has not acted in good faith in this case. WEG apparently believed that it could have it both ways. Delay filing a claim in the hope that it would get engaged on a more profitable post-petition transaction, and if the transaction did not come through still be able to assert a claim well beyond the bar date. This factor weighs in favor of denying the Motion.

30. Finally, if the Motion is granted, the Debtors reserve the right to object to WEG's claim on any basis.

## CONCLUSION

31. WEG has not satisfied the excusable neglect standard. It was aware of the bankruptcy case and actively engaged with the Debtors from the very beginning of the case. WEG had actual knowledge of the case since June 4, 2021. WEG did not raise its potential claim involving Sandton until after the post-petition transaction it was pursuing fell through.

WHEREFORE, the Debtors request that the Court deny the Motion and grant the Debtors such other and further relief as is just.

Dated: October 25, 2021.
Houston, Texas

**PORTER HEDGES LLP**

By: */s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl (TX 24038592)
Aaron J. Power (TX 24058058)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248

**COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION**