**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **OFS INTERNATIONAL LLC,** *et al.*,[1] | Case No. 21-31784 (DRJ) |
| Debtors. | (Jointly Administered) |

**WORLD EQUITY GROUP, INC.'S EXHIBIT AND WITNESS LIST
FOR HEARING ON ITS EMERGENCY MOTION TO ALLOW LATE FILED
PROOF OF CLAIM PURSUANT TO FEDERAL RULES OF
BANKRUPTCY PROCEDURE 3003(c)(3) AND 9006(b)(1)**

World Equity Group, Inc. ("WEG") files this Exhibit and Witness List for the hearing to

be held on October 26, 2021, at 3:00 p.m. in Courtroom 400 of the United States Courthouse, 515

Rusk Street, Houston, Texas 77002 (the "Hearing").

**EXHIBITS**

| NO. | Description | Mark | Offer | Object | Admit | With-draw | Disposition after Trial |
|---|---|---|---|---|---|---|---|
| 1. | Northview Advisors LLC Investment Banking Engagement Letter Dated March 23, 2020 (Debtors' Ex. 2, Doc. No. 339) | | | | | | |
| 2. | Affidavit of Mark Lishchynsky (Attached to WEG's Motion, Doc. No. 322) | | | | | | |
| 3. | October 6, 2021 email exchange between R. Orr and J. Schroeder (redacted for attorney privilege) | | | | | | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: OFS International, LLC (3527); Threading and Precision Manufacturing LLC (8899): OFSI Holding, LLC (3419).

| NO. | Description | Mark | Offer | Object | Admit | With-draw | Disposition after Trial |
|---|---|---|---|---|---|---|---|
| 4. | October 19, 2021 email communication from Debtors' Counsel | | | | | | |
| 5. | Any pleadings, reports, exhibits, transcripts, proposed orders, Court orders, or other documents filed in the above-captioned bankruptcy case. | | | | | | |
| 6. | Any exhibit introduced by any other party. | | | | | | |
| 7. | Rebuttal or impeachment exhibits as necessary. | | | | | | |

## **WITNESSES**

WEG may call the following witnesses at the Hearing:

1.     Alexei Ratnikov, Chief Financial Officer for OFSI.

2.     Rebuttal witnesses as necessary.

3.     Any witness listed by any other party.

WEG reserves its right to amend or supplement this Exhibit and Witness List as necessary in advance of the Hearing.

DATED:          October 27, 2021
                 Houston, Texas

                              Respectfully submitted,

                              **HENNEMAN RAU KIRKLIN & SMITH LLP**

                              By:    /s/ *Allyson S. Johnson*
                                   Matthew B. Henneman
                                   Texas State Bar No. 00790865
                                   *mhenneman@hrkslaw.com*
                                   Allyson S. Johnson
                                   Texas State Bar No. 24113379
                                   *ajohnson@hrkslaw.com*

815 Walker Street, Suite 1440
Houston, Texas 77002
Phone: 713-955-6030
Fax: 713-955-6141

**ATTORNEYS FOR MOVANT
WORLD EQUITY GROUP, INC.**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of October, 2021, the above and foregoing document was filed electronically using CM/ECF and that a true and correct copy of the foregoing was served to Debtors' counsel and all parties participating in the CM/ECF system in this manner.

*/s/ Allyson S. Johnson*
Allyson S. Johnson



**Investment Banking Engagement Letter**

March 23, 2020

OFS International LLC
7735 Miller Road Number 3
Houston, TX 77049
ATTN: Konstantin Semerikov, CEO

Dear Mr. Semerikov,

This letter confirms our understanding that **OFS International LLC**, a Texas limited liability company and its affiliates, subsidiaries, and to-be-formed entities (the "**Company**" or "**you**"), has engaged **Northview Advisors LLC** of **World Equity Group, Inc.** (including its affiliates, **"WEG"**, "**we**" or "**us**"), to provide the investment banking services as described below. This letter agreement (the "**Agreement**") sets forth the terms and conditions pursuant to which WEG will provide the investment banking services as described herein. The engagement described herein shall be in accordance with applicable laws and pursuant to the following procedures, terms and conditions.

1.      **Engagement.**   The Company hereby retains WEG to act as its financial advisor and placement agent in connection with the possible placement of senior secured debt, working capital revolver, unsecured or non-senior debt, and preferred equity interests, or equity (each, a **"Financing Transaction"**). WEG agrees to use its best efforts, consistent with customary practice, to affect the Financing Transaction as soon as practicable under the circumstances. The Company acknowledges that consummation of the Financing Transaction is subject, among other factors, to acceptable documentation, market conditions, and satisfaction of the conditions set forth in one or more agreements to be entered into with any financing source, lender, investor or purchaser of securities ("**Investor[s]**"). Those prospective Investors and their affiliates that have been introduced to the Company by WEG for the purposes of evaluating a Financing Transaction ("**WEG Party**") will have signed a non-disclosure agreement with the Company, or with WEG on behalf of the Company, as a result of WEG's introduction.  In the event that the Company closes a Financing Transaction with any WEG Party during the period covered by this Agreement as defined in Section 6 herein, WEG shall be paid the full Financing Transaction Fee and expenses, as described more fully below in Section 8.  It is expressly understood that this engagement does not constitute any commitment, express or implied, on the part of WEG to provide, and does not ensure the successful placement of, any portion of the Financing Transaction.

2.      **Materials.** WEG's services will include, if appropriate or if reasonably requested by the Company: (a) reviewing the Company's financial condition, operations, competitive environment, prospects, and related matters for potential lenders, financing sources or investors; (b) assisting with the preparation of a non-confidential teaser and other diligence materials, if deemed appropriate (collectively, the " **Materials**"); (c) soliciting, coordinating, and evaluating indications of interest and



**EXHIBIT 1**

proposals regarding a Financing Transaction; (d) advising the Company as to the structure of a Financing Transaction; and (e) providing such other financial advisory and investment banking services reasonably necessary to accomplish the foregoing. The Company hereby authorizes WEG to send prospective Investors the information package and other pertinent information and legal agreements concerning the Financing Transaction. Notwithstanding the foregoing, where WEG assists the Company in preparing any Materials addressed to, or to be distributed to, Investors, the Company shall remain solely responsible for such Materials.

3.    **Exclusivity.** The Company agrees that neither it, its equity holders, or other affiliates, nor its management, will initiate any discussions regarding a possible Financing Transaction during the term of this Agreement, without WEG's knowledge and consent. In the event that the Company, its equity holders or other affiliates, or its management receives any inquiry regarding a possible Financing Transaction, WEG will be promptly informed of such inquiry so that it can evaluate such party and its interest in any Financing Transaction and assist the Company in any resulting negotiations. In the event that the Company consummates a Financing Transaction with any party during the period covered by this Agreement, WEG shall be paid a l Financing Transaction Fee and expenses, as described more fully below in Section 8.

4.    **Company Assistance.** The Company will provide WEG with (i) the necessary assistance and information required throughout the term of the WEG's engagement hereunder; (ii) reasonable access to the Company's officers, directors, employees, counsel, accountants and consultants; and (iii) all assistance reasonably necessary to WEG's performance under this Agreement. In connection with WEG's services, the Company will furnish to the WEG such information and data relating to the Company as WEG may reasonably request. The Company recognizes and confirms that WEG, in the performance of its services hereunder, may rely upon such information and data received from the Company and its advisors without independent verification by WEG and that WEG does not assume responsibility for the accuracy or completeness of such information received from the Company and its advisors or from potential investors, whether or not WEG makes any independent verification thereof. The Company represents and warrants to WEG that, unless otherwise clearly noted thereon, all information made available to WEG pursuant hereto will, to the best of the Company's knowledge, be complete and correct in all material respects and will not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading. The Company further represents and warrants to WEG that any and all projections (financial or otherwise) provided to WEG pursuant hereto will have been prepared in good faith and will be based upon assumptions that are, in the Company's business judgment, reasonable. The Company will promptly notify WEG if it learns of any material misstatement in, or material omission from, any information previously delivered to WEG.

5.    **Definitive Agreement.** The definitive terms and conditions of any Financing Transaction will be determined by the Company and set forth in such definitive agreements reflecting the Financing Transaction (a **"Definitive Agreement"**). This Agreement neither constitutes a Definitive Agreement nor obligates the Company or WEG to enter into a Definitive Agreement or otherwise proceed with the consummation of a Financing Transaction.

6.    **Term and Tail Period.**    This Agreement shall have a term of 12 months from the date of this Agreement set forth above. Notwithstanding the foregoing, the Company may terminate this Agreement at any time, with or without cause, on at least thirty (30) days' written notice to WEG. WEG may terminate this Agreement at any time if the Company is in material breach of this Agreement, on written notice to the Company. Notwithstanding the foregoing, no expiration or termination of this Agreement shall affect: (a) the Company's indemnification, reimbursement, contribution, and other obligations as set forth in the Indemnification Section 11 this Agreement; (b) the confidentiality



provisions set forth herein; (c) WEG's right to receive, and the Company's obligation to pay, any fees and expenses due, whether or not any Financing Transaction shall be consummated before or after the effective date of termination, all as more fully set forth in this Agreement; and (d) the agreements of the Company and WEG with respect to choice of law and forum. In the event of any termination of this Agreement (other than by the Company for material breach by WEG or by WEG for material breach by the Company), WEG shall be entitled to the Financing Transaction Fee as defined below if the Company enters into an agreement or increases the Financing Transaction prior to the date that is 12 months from the date of termination of this Agreement (such period, the **"Tail Period"**) with an Investor that had been referred to the Company by WEG before the proper termination of this Agreement, provided that such agreement subsequently results in the consummation of a Financing Transaction. Not more than 10 business days after termination of this Agreement, WEG shall provide to the Company in writing a list of any parties introduced to the Company by WEG, which list shall be binding for purposes of this Section.

7.   **Monthly Retainer.** The Company shall pay WEG a monthly nonrefundable retainer fee of $10,000 payable by wire transfer to WEG with the first payment due and owed upon execution of this agreement and each subsequent payment due every 30 days thereafter. WEG shall be paid a maximum aggregate retainer equal to three (3) months.

8.   **Financing Transaction Fee.**  In addition to the Retainers as described in Section 7, on the Closing of each Financing Transaction with a WEG Party, whether or not resulting from the services of WEG, during the term of this Agreement or within the Tail Period, the Company shall pay WEG a cash fee equal to (i) 2.00% of the aggregate amount of debt received or committed, whichever is greater, by a WEG Party; ii) 3.0% of the aggregate amount of equity raised and received by the Company from a WEG Party at a Transaction Value, as defined below, less than or equal to $55,000,000, (iii) 4.0% of the aggregate amount of equity raised and received by the Company from a WEG Party at a Transaction Value between $55,000,001 and $85,000,000, or (iv) 5.0% of the aggregate amount of equity raised and received by the Company from a WEG Party at a Transaction Value greater than $85,000,001.

Furthermore, on the Closing of a Financing Transaction with any Investor not deemed a WEG Party, Company shall pay WEG a Financing Transaction Fee equal to a minimum of $100,000. The Company may, in their sole discretion, pay WEG a higher Financing Transaction Fee in this instance. Furthermore, WEG shall not be owed a Financing Transaction Fee for any Financing Transaction undertaken with its current lenders, JP Morgan Chase or PAO TMK. For greater clarity, if the Company is not successful in completing a Financing Transaction during the Term or within the Tail Period, at a minimum, WEG is paid the Retainer per Section 7 herein.

"**Transaction Value**" shall mean the aggregate value of the Company based on the proportionate ownership earned by an Investor as a result of their investment after said ownership is earned. Any and all ownership in the Company by an Investor shall include all cash, cash equivalents, securities, and any other forms of payment received or to be received, directly or indirectly, by the Company and its share, option, warrant and debt holders before the payment of fees and expenses, in each case without duplication.

As an example, if an Investor invests $15,000,000 into the Company and, as a result of their investment, receives 20% ownership of the Company's equity, the Transaction Value of the Company based on that equity Financing Transaction is equal to $75,000,000, in which case WEG shall be due a Financing Transaction Fee equal to 4.0% of $15,000,000, or $600,000.

9.   **Non-Disclosure of Company Information.**   WEG agrees that all nonpublic information obtained in connection with its engagement will be held by it in strict confidence and will be

used by it solely for the purposes of performing its obligations relating to its engagement; provided, however, that nothing herein shall prevent WEG from disclosing any such information (a) to Investors in connection with the Financing Transaction, (b) to Investors expressing an interest in entering into a Financing Transaction, (c) to any rating agency, (d) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, (e) upon the request or demand of any governmental authority or regulatory body having jurisdiction over WEG or the Company, (f) to the extent that such information was or becomes publicly available other than by reason of disclosure by WEG in violation of this Agreement or was or becomes available to WEG from a source that is not known by WEG to be subject to a confidentiality obligation to the Company, (g) to WEG's employees, legal counsel, independent auditors and other experts or agents who need to know such information in connection with the Financing Transaction or any other services provided by WEG to the Company, or (h) in connection with any suit, action or proceeding for the purpose of defending itself, reducing its liability or protecting or exercising any of its rights, remedies or interests. This undertaking by WEG shall automatically terminate two (2) years following the last to occur of the completion of a Financing Transaction or termination of the engagement hereunder. At the request of the Company, WEG will execute a commercially reasonable nondisclosure agreement in connection with the delivery and use of such information. At Company's request, WEG will promptly destroy any and all Materials containing such confidential information except to the extent that WEG is required to maintain such information in accordance with legal or regulatory requirements.

10.    **WEG Expenses.** The Company will promptly reimburse WEG on a monthly basis for all reasonable out-of-pocket expenses (including, without limitation, its travel, accommodation and communications expenses and the reasonable fees and disbursements of legal counsel to WEG) incurred by the WEG in connection with performing its obligations hereunder. The Company's obligation to reimburse WEG for out-of-pocket expenses pursuant to this Section will apply whether or not a Financing Transaction is consummated. WEG shall be entitled to deduct any reimbursement due under this Section from the gross proceeds of the Financing Transaction. For the avoidance of doubt, the Company is solely responsible for any direct expenses incurred by the Company in connection with the Financing Transaction, including, without limitation, fees and disbursements of Company's legal counsel, accountants and other advisors, as well as expenses relating to printing or presenting the Materials, and any fees and expenses of filing with the SEC, FINRA and Blue Sky fees, if necessary, and expenses and any road show costs and expenses of WEG and Company personnel. The Company's obligation to pay the foregoing fees and expenses and reimburse WEG for its expenses as set forth herein shall not be subject to counterclaim or set-off or otherwise affected by any claim or dispute the Company may have involving WEG or any other party.

11.    **Indemnification.** The Company hereby agrees to indemnify and hold harmless WEG and its affiliates, and their respective past, present, and future directors, officers, shareholders, employees and agents, to the fullest extent lawful, from and against any and all losses, claims, damages, or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Company's negligence or intentional misconduct in connection with this Agreement or any Financing Transaction (or proposed Financing Transaction) contemplated by this Agreement.

WEG hereby agrees to indemnify and hold harmless the Company and its affiliates, and their respective past, present, and future directors, officers, shareholders, employees and agents, to the fullest extent lawful, from and against any and all losses, claims, damages, or liabilities (or actions in respect thereof), joint or several, arising out of or related to WEG's negligence or intentional misconduct in connection with this Agreement or any Financing Transaction (or proposed Financing Transaction) contemplated by this Agreement.

*ks*

12.     **Non-Contravention.** During the term of this engagement, the Company will not (a) offer any Securities or any securities substantially similar to the Securities for sale to, or solicit any offers to buy from, any person or persons, whether directly or indirectly, other than through WEG or (b) engage in any discussions with any person other than representatives of WEG for the purpose of engaging, or considering the engagement of, such person as a finder or broker in connection with the sale by the Company of the Securities or the entering into of a Financing Transaction, other than such offers or discussions relating to: (i) securities issued pursuant to contractual obligations of the Company in effect as of the date of this Agreement and disclosed to WEG prior to the execution of any Definitive Agreement, it being understood that such contractual obligations incorporated by reference into the Materials shall be deemed to have been disclosed to WEG; and (ii) equity securities issued pursuant to employee benefit, option or purchase plans in effect as of the date of this Agreement; and (iii) securities issued on a pro rata basis to all holders of a class of outstanding equity securities of the Company. The Company shall promptly furnish to WEG the names and addresses of all persons and entities with which the Company is having active discussions or contacts concerning a possible Financing Transaction or the sale of the Securities or any sale of similar securities of the Company.

13.     **No Other Rights.** WEG will not have any rights or any obligations in connection with the Financing Transaction contemplated by this Agreement other than those expressly provided herein.

14.     **Survival.** Any termination of this Agreement pursuant to Section 6 shall not affect the reimbursement (Section 10) or indemnification (Section 11) provisions set forth herein or the provisions of Section 6 through 9, Sections 12 through 17, 19 through 21 and 23, all of which will remain in full force and effect; provided, however, that in no event shall the provisions of Section 11 survive a termination of this Agreement by the Company based on a material breach by WEG or the material failure of WEG to provide the services described herein (**"for Cause"**).

15.     **Right of First Refusal.**   Intentionally Omitted.

16.     **Press Releases, Publicity.** WEG shall have the right, subsequent to the consummation of a Financing Transaction, to place customary "tombstone" advertisements at its own cost in financial and other newspapers and journals describing its services hereunder. WEG shall provide the Company with a draft of any announcement that it proposes to place and shall make such revisions to the announcement as the Company reasonably may request within 2 business days after the Company's receipt of the draft announcement. The Company reserves the right to veto a press announcement.

17.     **No Fiduciary Relationship.** The Company acknowledges that it is a sophisticated business enterprise with competent financial advisors and legal counsel, and the Company has retained WEG for the limited purposes set forth in this Agreement. The parties acknowledge and agree that their respective rights and obligations as set forth herein are contractual in nature. Accordingly, the Company disclaims any intention to impose any fiduciary obligations on WEG by virtue of the engagement contemplated by this Agreement, and WEG shall not be deemed to have any fiduciary duties or obligations to any investors, the Company, any other business entities, or their respective officers, directors, shareholders, partners, members, affiliates or creditors, as a result of this Agreement or the services to be provided pursuant hereto. The Company agrees that any agreements documenting the Financing Transaction as contemplated by this Agreement shall include provisions reasonably acceptable to WEG in which the purchaser or other parties thereto disclaim and disavow any reliance upon WEG in connection therewith. Any such agreements also shall contain provisions, in a form reasonably acceptable to WEG, which reflect that the purchaser or other parties thereto relied solely upon their own independent investigation and counsel before deciding to enter into the Financing Transaction.

*KS*

18.     **No Third-Party Beneficiaries Intended.** The services provided by WEG hereunder are solely for the benefit of the Company and are not intended to confer any rights upon any persons or entities not a party hereto (including, without limitation, security-holders, employees or creditors of the Company) as against WEG or its directors, officers, agents and employees.

19.     **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without regard to principles of conflicts of law. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

20.     **Arbitration.** Any dispute or controversy arising out of this Agreement shall be determined by arbitration conducted in Houston, Texas in accordance with the rules of the Financial Industry Regulatory Authority then in effect. Any arbitration award shall be final and binding upon the Company and WEG, and judgment upon the award may be entered in any court having jurisdiction.

21.     **Entire Agreement**. This Agreement constitutes the entire agreement and understanding between WEG and the Company regarding the subject matter hereof and supersede any and all prior agreements and understandings, whether oral or written, relating to the subject matter hereof. This Agreement cannot be modified or changed nor can any of its provisions be waived, except by a writing signed by all parties.

22.     **Severability.** The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect in accordance with the terms hereof.

23.     **Other Business Interests.** The Company acknowledges that WEG and its affiliates may have and may continue to have investment banking or other relationships with parties other than the Company, in which WEG may acquire information of interest to the Company. WEG shall have no obligation to disclose such information to the Company or to use such information in connection with this Agreement.

24.     **Counterparts.** This Agreement may be executed in counterparts, each of which shall be an original but all of which together constitute one instrument. This Agreement also may be executed by signatures on facsimiles hereof or signatures transmitted electronically.

25.     **Headings.** The headings of the sections of this Agreement are inserted for convenience of reference only and will not affect the meaning or interpretation of this Agreement.

26.     **Binding Effect.** This Agreement will be effective upon the due execution hereof by each party to this Agreement. Upon becoming effective, this Agreement will be binding upon each party to this Agreement and upon each successor and assignee of each party to this Agreement and will inure to the benefit of, and be enforceable by, each party to this Agreement and each successor and permitted assign of each party to this Agreement.

27.     **No Waiver.** No course of performance or other conduct hereafter pursued, accepted or acquiesced in, and no oral agreement or representation made in the future, by any party, whether or not relied or acted upon, and no usage of trade, whether or not relied or acted upon, will modify or terminate this Agreement, impair or otherwise affect any obligation of any party pursuant to this Agreement or otherwise operate as a waiver of any such right or remedy. No modification of this Agreement will be effective unless made in writing duly executed by all of the parties to this Agreement.

*KS*

28.     **Payment instructions.**    All success fees, expense reimbursements, retainer and other payments made by the Company pursuant to this Agreement shall be made directly to WEG. All payments shall be made by wire or check pursuant to the instructions below:

<u>Wire to</u>: Citibank

   1828 N. Arlington Heights Rd.
   Arlington Heights, IL 60004
   Phone: 847-394-6631

<u>For the Benefit of</u>:  World Equity Group, Inc.
       1650 North Arlington Heights Rd.
       Arlington Heights, IL 60004
       Phone: 847-342-1700
       ABA Number: ███████
       Account Number: ███████
       Ref: NVA – OFSI

WEG/NVA may change its Payment instructions set forth above by giving notice to the other party in accordance with Section 29.

29.     **Notices.**   Except as otherwise provided herein, all notices or other communications required or permitted hereunder shall be in writing and shall be delivered, telecopied or telexed and confirmed to the requisite party, at its address below:

If to the WEG/NVA:      World Equity Group, Inc.
           1650 North Arlington Heights Rd.
           Arlington Heights, IL 60004
           Phone: 847-342-1700
           ATTN: Mark Lishchynsky, COO
           Email: MLishchynsky@weg1.com

           With a copy to:
           Northview Advisors LLC
           12220 Birmingham Hwy
           Building 30
           Alpharetta, GA 30004
           ATTN: JT Schroeder
           Email: jts@northview-advisors.com

If to Company:       OFS International LLC
           7735 Miller Road Number 3
           Houston, TX 77049
           ATTN: Konstantin Semerikov, CEO
           Email: ksemerikov@ofsint.com

Each party may change its address set forth above by giving notice to the other parties in accordance with this Section.

**SIGNATURES ON FOLLOWING PAGE**

Securities and Advisory services offered through World Equity Group, Inc. / Member FINRA/SIPC
300 Cole Street, Austin, Texas 78737

*KS*

*KS*

Securities and Advisory services offered through World Equity Group, Inc. / Member FINRA/SIPC
300 Cole Street, Austin, Texas 78737

We are delighted to accept this engagement and look forward to working with you toward the successful completion of a Financing Transaction. Please evidence your acceptance of, and agreement with, the provisions of this Agreement by signing and returning to WEG the enclosed copy of this Agreement.

Very truly yours,

WORLD EQUITY GROUP, INC.

By: *Mark Lishchynsky*
Name: Mark Lishchynsky
Title: COO

Agreed to and accepted as of the date first written above:

OFS International LLC

By: _____
Konstantin Semerikov
CEO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| OFS INTERNATIONAL LLC, *et al.*,[1] | Case No. 21-31784 (DRJ) |
| Debtors. | (Jointly Administered) |

## AFFIDAVIT OF MARK LISHCHYNSKY

STATE OF ILLINOIS         §
                          §
COUNTY OF COOK            §

Before me, the undersigned authority, on this day personally appeared Mark Lishchynsky, who, upon his oath, deposed and stated the following:

1.      My name is Mark Lishchynsky. I am over the age of 21, have never been convicted of a felony or misdemeanor involving moral turpitude, and am fully competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

2.      I am the Corporate Chief Operating Officer at World Equity Group, Inc. ("WEG"), an independent, registered investment advisory firm. At all times relevant to this dispute, I have worked in the financial services industry in Arlington Heights, Illinois. I am familiar with WEG's business practices and procedures, as well as its clients and client relationships.

3.      This affidavit is made in support of WEG's Emergency Motion to Allow a Late Filed Unsecured Proof of Claim filed in the Bankruptcy Court (the "Emergency Motion").

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: OFS International, LLC (3527); Threading and Precision Manufacturing LLC (8899): OFSI Holding, LLC (3419).

**EXHIBIT 2**

4.      NorthView Advisors, LLC ("NorthView") is a full-service investment bank that offers securities through World Equity Group, Inc.

5.      Through NorthView, WEG entered into an Investment Banking Engagement Letter (the "Agreement") with OFS International LLC ("OFSI") on March 23, 2020.[2]  The Agreement provided that WEG would act as OFSI's financial advisor and placement agent in connection with the possible placement of senior secured debt, working capital revolver, unsecured or non-senior debt, and preferred equity interests, or equity (defined as a "Financing Transaction" in the Agreement). *See* Ex. 1 attached to the Emergency Motion.

6.      On August 7, 2020, WEG through NorthView provided to Mr. Semerikov a list of Investors/WEG Parties introduced to OFSI pursuant to Section 6 of the Agreement[3].

7.      This Agreement contains terms related to Financing Transactions between an investor introduced by WEG to OFSI. *See* the "Engagement" Section 1 of the Agreement attached to the Emergency Motion as Ex. 1. For each possible Financing Transaction, OFSI agreed to promptly notify WEG so that WEG could evaluate the party and its interest in the Financing Transaction. *See* the "Exclusivity" Section 3 of the Agreement attached to the Emergency Motion as Ex. 1. Further, the Agreement contains terms related to fees due to WEG for each Financing Transaction. *See* the "Financing Transaction Fee" Section 8 of the Agreement attached to the Emergency Motion as Ex. 1. By signing this agreement, OFSI acknowledged that it was required to notify WEG of Financing Transactions between OFSI and investors that WEG introduced to it and that it would pay to WEG the fees for Financing Transactions consummated pursuant to the Agreement. Specifically, OFSI agreed to the following:

---

[2] A true and correct copy of the Agreement is attached to the Emergency Motion as Exhibit 1.
[3] A true and correct copy of the list of Investors/WEG Parties introduced to OFSI is attached to the Emergency Motion as Exhibit 2.

- The Company agrees that neither it, its equity holders, or other affiliates, nor its management, will initiate any discussions regarding a possible Financing Transaction during the term of this Agreement, without WEG's knowledge and consent. In the event that the Company, its equity holders or other affiliates, or its management receives any inquiry regarding a possible Financing Transaction, WEG will be promptly informed of such inquiry so that it can evaluate such party and its interest in any Financing Transaction and assist the Company in any resulting negotiations. In the event that the Company consummates a Financing Transaction with any party during the period covered by this Agreement, WEG shall be paid a I Financing Transaction Fee and expenses, as described more fully below in Section 8.

Section 3, "Exclusivity" of the Agreement.

8.      Sandton Capital ("Sandton") is one of the Investors contained in the list WEG provided to OFSI on August 7, 2020 pursuant to the Agreement.

9.      On May 31, 2021, OFSI filed its bankruptcy petition for chapter 11 protection. The deadline to file proofs of claim (the "Bar Date") in this bankruptcy was August 14, 2021.

10.     On September 10, 2021, counsel for OFSI emailed a representative from NorthView regarding a draft of the "employment application" to be filed with the Bankruptcy Court. Sandton was listed on Schedule 1(d) of the document that OFSI's counsel emailed to the NorthView representative. Even though Sandton's name was included in a schedule of the document included in the September 10, 2021 email, WEG was unaware that there was a Financial Transaction consummated between OFSI and Sandton. At no point did OFSI inform WEG of its relationship with Sandton.

11.     On October 6, 2021, Sandton directly contacted WEG regarding the consummation of a Financing Transaction between it and OFSI. That was the first time WEG had actual notice that a Financing Transaction had been consummated between OFSI and Sandton.

12.     On October 6, 2021, WEG contacted OFSI directly regarding the Financing Transaction consummated between OFSI and Sandton. On October 19, 2021, OFSI's bankruptcy counsel sent an email to WEG through NorthView stating that the date to file proofs of claim had

3

passed on August 14, 2021. OFSI has never notified WEG of the Financing Transaction between it and Sandton.

13. On October 19, 2021, WEG's counsel contacted outside counsel regarding OFSI's bankruptcy filing and the passing of the Bar Date. Subsequently, the WEG filed its proof of claim and the Emergency Motion. WEG waits for notification of hearing on its Emergency Motion.

14. WEG has suffered and continues to suffer irreparable harm from OFSI's breach of the Agreement and failure to notify WEG of the Financial Transaction between it and Sandton. WEG missed the Bar Date in the OFSI bankruptcy because it did not know of the Financing Transaction between OFSI and Sandton. WEG only learned of the Bar Date on October 19, 2021. Should WEG not be allowed to file its proof of claim, it will suffer immediate and irreparable harm, including, but not limited to, exclusion from filing its proof of claim and receiving any distributions to which it is entitled.

Further Affiant sayeth not.

MARK LISHCHYNSKY

SWORN TO AND SUBSCRIBED before me on the 2 2 day of October, 2021.

Official Seal
Robert Keven Finnerty
Notary Public State of Illinois
My Commission Expires 02/19/2025

_Robert K. Finnerty_
NOTARY PUBLIC in and for the STATE OF ILLINOIS

_ROBERT K. FINNERTY_
Printed Name of Notary Public
My Commission Expires: 02 / 19 / 2025

4

**From:** Matt Henneman
**To:** Allyson Johnson
**Subject:** ██████████████
**Date:** Thursday, October 21, 2021 12:00:07 PM

████████████████████████████████████████████████

████

### Matt Henneman
mhenneman@hrkslaw.com
713-955-6110

---

**From:** █████████████████████
**Sent:** Thursday, October 21, 2021 11:52 AM
**To:** Matt Henneman <mhenneman@hrkslaw.com>
**Subject:** ███████████████

████████████████████████████████████

████████████████

Begin forwarded message:

> **From:** John Lindquist <jlindquist@northview-advisors.com>
> **Date:** October 21, 2021 at 11:30:19 AM CDT
> **To:** Tim Woods <twoods@weg1.com>
> **Subject:** [EXTERNAL] FW: OFSI

**John Lindquist**
**Branch Manager - Principal**
**NorthView Advisors LLC**
**Office of World Equity Group, Inc.**
**Austin, TX 78737**
**(847) 342-1700 ext 280**
**(512)599-1766 (M)**
**www.northview-advisors.com**
https://worldequitygroup.com



**From:** JT Schroeder <jts@northview-advisors.com>
**Sent:** Tuesday, October 19, 2021 8:49 AM

**EXHIBIT 3**

**To:** John Lindquist <jlindquist@northview-advisors.com>
**Cc:** Paul Gorski <pgorski@northview-advisors.com>
**Subject:** FW: OFSI

---

**From:** Robert Orr <rorr@sandtoncapital.com>
**Date:** Wednesday, October 6, 2021 at 4:27 PM
**To:** JT Schroeder <jts@northview-advisors.com>
**Subject:** RE: OFSI

https://petition.substack.com/p/ofsinternational

The debtors have locked in $16.5mm in post-petition financing from Sandton Capital, including a $12.5mm DIP ABL facility and a $4mm DIP term loan facility. The DIP facilities include a rollup of Sandton Capital's $12.5mm pre-petition ABL facility, which before filing, was secured by all of the debtor's property except their real property.

---

**From:** JT Schroeder <jts@northview-advisors.com>
**Sent:** Wednesday, October 6, 2021 3:55 PM
**To:** Robert Orr <rorr@sandtoncapital.com>
**Subject:** Re: OFSI

Fun stuff, hate those deals. Had that last year during Christmas/New Years week. Sucks! What was the transaction size?

---

**From:** Robert Orr <rorr@sandtoncapital.com>
**Date:** Wednesday, October 6, 2021 at 3:32 PM
**To:** JT Schroeder <jts@northview-advisors.com>
**Subject:** RE: OFSI

Memorial Day, which was fun, because it blew up my entire Memorial Day Weekend.

---

**From:** JT Schroeder <jts@northview-advisors.com>
**Sent:** Wednesday, October 6, 2021 3:25 PM
**To:** Robert Orr <rorr@sandtoncapital.com>
**Subject:** OFSI

Hey bud,

Great catching up with you today. Question, when dd you all close the deal with OFSI?

JT Schroeder
Managing Director
Northview Advisors
770-826-5048
jts@northview-advisors.com

World Equity Group, Inc. does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making decisions and is for informational purposes only. This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me by return e-mail or otherwise immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information. General e-mail messages are not always fully encrypted. As such, client sensitive information sent electronically to or received from your World Equity Group, Inc. Financial Consultant, should be done using the World Equity Group Secure Messaging Portal. World Equity Group, Inc. is a registered broker/dealer and investment advisor in all 50 states. Member FINRA/SIPC. The World Equity Group Form CRS can be found here:

https://documentcloud.adobe.com/link/track?uri=urn:aaid:scds:US:b56952a2-3d10-455e-8b3d-44553cdc6113

. . This email and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return email, delete this email and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. Unless otherwise stated, opinions expressed in this email are those of the author and are not endorsed by the author's employer. This email is not intended to constitute legal, tax or accounting advice, or investment recommendations. Any projections, market outlooks or estimates in this email are forward looking statements, are based upon certain assumptions and should not be construed to be indicative of the actual events which will occur. Other events which were not taken into account may occur and may significantly affect returns or performance of an investment. Past performance does not necessarily predict future results.

World Equity Group, Inc. does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making decisions and is for informational purposes only. This e-mail may be privileged and/or confidential, and the sender does

not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me by return e-mail or otherwise immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information. General e-mail messages are not always fully encrypted. As such, client sensitive information sent electronically to or received from your World Equity Group, Inc. Financial Consultant, should be done using the World Equity Group Secure Messaging Portal. World Equity Group, Inc. is a registered broker/dealer and investment advisor in all 50 states. Member FINRA/SIPC. The World Equity Group Form CRS can be found here:

https://documentcloud.adobe.com/link/track?uri=urn:aaid:scds:US:b56952a2-3d10-455e-8b3d-44553cdc6113

. . This email and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return email, delete this email and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. Unless otherwise stated, opinions expressed in this email are those of the author and are not endorsed by the author's employer. This email is not intended to constitute legal, tax or accounting advice, or investment recommendations. Any projections, market outlooks or estimates in this email are forward looking statements, are based upon certain assumptions and should not be construed to be indicative of the actual events which will occur. Other events which were not taken into account may occur and may significantly affect returns or performance of an investment. Past performance does not necessarily predict future results.

World Equity Group, Inc. does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making decisions and is for informational purposes only. This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me by return e-mail or otherwise immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information. General e-mail messages are not always fully encrypted. As such, client sensitive information sent electronically to or received from your World Equity Group, Inc. Financial Consultant, should be done using the World Equity Group Secure Messaging Portal. World Equity Group, Inc. is a registered broker/dealer and investment advisor in all 50 states. Member FINRA/SIPC. The World Equity Group Form CRS can be found here:
https://documentcloud.adobe.com/link/track?uri=urn:aaid:scds:US:b56952a2-3d10-455e-8b3d-44553cdc6113

World Equity Group, Inc. does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making decisions and is for informational purposes only.
This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me by return e-mail or otherwise immediately.
Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.
General e-mail messages are not always fully encrypted. As such, client sensitive information sent electronically to or received from your World Equity Group, Inc. Financial Consultant, should be done using the World Equity Group Secure Messaging Portal. World Equity Group, Inc. is a registered broker/dealer and investment advisor in all 50 states. Member FINRA/SIPC. The World Equity Group Form CRS can be found <u>here.</u>

---

World Equity Group, Inc. does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making decisions and is for informational purposes only. This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me by return e-mail or otherwise immediately.
Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.
General e-mail messages are not always fully encrypted. As such, client sensitive information sent electronically to or received from your World Equity Group, Inc. Financial Consultant, should be done using the World Equity Group Secure Messaging Portal. World Equity Group, Inc. is a registered broker/dealer and investment advisor in all 50 states. Member FINRA/SIPC. The World Equity Group Form CRS can be found <u>here.</u>

# PORTER | HEDGES

**Aaron J. Power**
(713) 226-6631 Phone
(713) 226-6231 Fax
apower@porterhedges.com

1000 Main Street, 36th Floor
Houston, Texas 77002-6341
(713) 226-6000 Main
porterhedges.com

October 19, 2021

**016564-0002**

Via Email

Paul Gorski (pgorski@northviewadvisors.com)
JT Schroder (jts@northviewadvisors.com)
Northview Advisors/World Equity Group ("WEG")

      Re:    OFS International LLC ("OFSI") Notice of Stay Violation and Termination of
               Engagement Agreement

Dear Paul and JT:

As you are aware, this firm represents OFSI and affiliates in a chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), Case No. 21-31784 (the "Bankruptcy Case"), which was filed on May 31, 2021 (the "Petition Date").

OFSI is protected by the Bankruptcy Code's automatic stay provisions found in 11 U.S.C. § 362. As a result of the automatic stay, you are precluded from, among other things, any act to obtain possession of property of the bankruptcy estate or to exercise control over property of OFSI's estate. This includes attempts to collect on pre-petition debts. Your delivery of an invoice dated October 6, 2021, for amounts allegedly owed by OFSI to WEG for a transaction which occurred prior to the Petition Date is a clear violation of the automatic stay. WEG had actual notice of the Debtor's bankruptcy case and the existence of the automatic stay. WEG must cease further collection efforts. Willful violations of the automatic stay may result in an action being filed against you to recover actual damages, including costs and attorney's fees, as well as punitive damages.

The deadline for filing proofs of claim in the Bankruptcy Case was August 14, 2021. WEG did not file a proof of claim prior to the bar date.

On July 8, 2021, WEG presented OFSI with an LOI from Store Capital for a potential sale lease back transaction. On September 7, 2021, OFSI executed a non-exclusive Investment Banking Engagement Letter with WEG (the "Engagement Agreement"). As noted in the preamble paragraph of the Engagement Agreement, the Engagement Agreement was expressly subject to Bankruptcy Court approval. On September 10, 2021, draft retention pleadings, including a declaration disclosing connections and conflicts of interest, was sent to WEG. WEG did not respond to this draft or execute the declaration. Accordingly, the application was not filed and the Bankruptcy Court did not approve the Engagement Agreement.

13035916v1

**EXHIBIT 4**

Paul Gorski
October 19, 2021
Page 2

      Notwithstanding the fact that the Engagement Agreement is not enforceable because it was not approved by the Bankruptcy Court, OFSI hereby serves WEG with notice of termination of the Engagement Agreement pursuant to paragraph 6 of the Engagement Letter.

Sincerely

Aaron J. Power

CC: Konstantin Semerikov (ksemerikov@ofsint.com)